IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| L.D., by and through his next friend, HEATHER D., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:23-cv-281 |
| FRIENDSWOOD INDEPENDENT SCHOOL DISTRICT, | § § § § | |
| Defendant. | § § | |

## ORIGINAL COMPLAINT

### I.  INTRODUCTION

1.  This is a civil action brought pursuant to 20 U.S.C. § 1415(i) to appeal and to obtain a reversal of an erroneous decision (the "Decision," attached as Exhibit A) by a hearing officer in an administrative proceeding.  This action also seeks attorneys' fees for time spent in representing Plaintiff in the proceeding below and in litigating the instant Complaint.

### II.  JURISDICTION

2.  This Court has jurisdiction pursuant to 20 U.S.C. § 1415, 28 U.S.C. §§ 1331 and 1343.

3.  Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because the events that give rise to this Complaint occurred in this district.

### III.  PARTIES

4.  Plaintiff L.D. is a thirteen-year-old student with disabilities who lives with his mother and next friend, Heather D., in or around Friendswood, Texas.  He resides within the geographical area served by the Friendswood Independent School District ("FISD").

5.      Defendant FISD is a duly incorporated Independent School District located primarily in Galveston County.  FISD is the resident school district for L.D. and is responsible for providing him with a free appropriate public education under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*. ("IDEA").

## IV.     STATEMENT OF FACTS

6.      Plaintiff Logan D. in the 2022-2023 school year was a sixth grade student who has received instruction and services from FISD and who qualifies for special education services as a student with autism, Other Health Impairment ("OHI"), and Specific Learning Disability. FISD recognizes Plaintiff as eligible for such services under the OHI area of Attention Deficit Hyperactivity Disorder.  FISD had served Plaintiff under the eligibility of Speech Impairment as well, due to difficulties in the area of pragmatic/social communication.  However, this eligibility was discontinued in 2021, despite Plaintiff continuing to meet the applicable criteria, ostensibly because the autism eligibility embraced some of the same characteristics.

7.      Plaintiff has substantial difficulties with, among other things, non-compliance, a tendency to disrupt group environments, poor impulse control, low frustration tolerance, getting easily frustrated, and perseveration.  He also is presenting with trauma-related behaviors. Plaintiff's difficulties with non-compliance are sufficiently severe that school staff members who have familiarity with Plaintiff have recognized that he shows many, if not all, the characteristics of Pathological Demand Avoidance, although the school district did not recognize that disorder as a specific eligibility.  Plaintiff tends to respond to any demand with a negative.  The Pathological Demand Avoidance profile requires that educators promote social interaction and communication skills so that the student can interact comfortably and effectively with adults and peers—a requirement that would involve working on generalization of skills.  The profile also

warns against focus on non-compliance as opposed to self-regulation. The profile also indicates that whole group training on neurodiversity and the like. The profile also indicates that a student should be provided a peer group that the student can identify with.

8.     Because of the above-discussed difficulties, Plaintiff has had significant behavioral issues for years. He had, for example, been restrained several times over the years. In light of these behavioral issues, FISD has placed Plaintiff in more and more restrictive environments. After his first Full Individual Evaluation in 2018 Plaintiff was placed in the PASS program.[1] In the PASS program, students are given direct instruction on social skills and are in the general education classroom for the majority of the day.

9.     In fourth grade it was determined that Plaintiff would be placed in the DBC or district behavioral classroom for his fifth grade year. During the fourth grade year in the PASS program, Plaintiff had been exhibiting a great deal of behavioral difficulties because of overstimulation in a classroom of approximately twenty students. Consequently, in the April ARD meeting of the fifth grade year, the district recommended that Plaintiff receive instruction in a "smaller group setting" or, in other words, the DBC classroom. From that point forward, Plaintiff received "all instruction in the District Behavior Classroom and going out for specials, lunch, and recess." By the end of his time at the school in the Fall semester of the 2022-2023 school year, as discussed below, Plaintiff was by himself in the classroom for most of the time.

10.    The guidelines for the DBC classroom included the requirement of flexible instructional arrangements for individualized support and small group learning opportunities as needs present." Small group learning opportunities cannot be accomplished with just one person in the classroom or even with two, but would require a group of

---

[1] "PASS" stands for "Positive Approach to Student Success."

approximately four or five at least. Such a small group setting of four or five would be consistent with the goals of Plaintiff's Behavior Intervention Plan, and a group setting of this sort would be necessary to teach Plaintiff generalization of skills.

11. By failing to teach generalization of skills in a one-person DBC classroom environment, the school district was effectively preventing Plaintiff from ever getting out of that environment. After all, if a certain level of social skills is required to interact with peers in the general education environment, but it requires generalization of such skills to apply them within that larger group setting, then, if Plaintiff could not obtain such generalization abilities in the DBC classroom, he would never gain the capacity to move beyond that setting. There were three students regularly attending the DBC classroom at the beginning of the 2022-2023 school year, including Plaintiff. However, one of those three students was only in the DBC classroom for thirty minutes a day during social skills time. The other student was originally in the DBC classroom with Plaintiff for more than half the day together because they had electives at different times. However, the other student was ultimately moved out of Plaintiff's DBC classroom entirely and into another separate DBC classroom. After that point, Plaintiff was almost always entirely alone in the DBC classroom except for the teacher. No generalization of skills was reasonably possible under such circumstances.

12. The DBC classroom teacher had only met Plaintiff at the beginning of that school year other than during a two-day "Bridge Camp" earlier that summer. Plaintiff had already developed trust issues with the DBC classroom teacher as early as Bridge Camp. She had not seen his Behavior Intervention Plan or any of his documentation prior to that interaction. She had only had limited briefing on the students she would be meeting and, with respect to Plaintiff,

4

that briefing focused primarily on the recommendation not to approach him during periods of agitation. At one point, she tapped Plaintiff on the shoulder, and he kicked her.

13. The problematic relationship was evidenced later during the 2022-2023 school year when Plaintiff made disparaging comments about the DBC classroom teacher. These problems were underscored in part by the DBC classroom teacher's continued failure to recognize certain characteristics of Plaintiff. Ultimately, the DBC classroom teacher explained that she was not concerned about Plaintiff's lack of progress with respect to certain IEP goals as of October 14, 2022, because she was focused on developing a stronger relationship with him. She admitted that the trust relationship was critical with Plaintiff and she needed to work further to develop that relationship. However, she had already irremediably undermined the foundations of any potential trust relationship.

14. Stability and routine are critically important to Plaintiff's behavioral stability. When the school district made changes to Plaintiff's environment at the end of his fifth grade year, he had difficulties with it, but the Special Education Coordinator took care to discuss the changes with Plaintiff ahead of time, so that he could make the necessary emotional adjustments. This is absolutely critical. The "calming corner," in particular, was extremely important to Plaintiff. Nevertheless, during Plaintiff's sixth grade year in 2022-2023, school district staff made unilateral changes to both the routines and the calming corner without notification to Plaintiff in a manner that would almost certainly trigger his problematic behaviors, given the nature and characteristics of his disability.

15. For example, the school district imposed shorter break times on Plaintiff without notice. The DBC classroom teacher implemented these changes after knowing Plaintiff for only approximately two weeks. The DBC classroom teacher also removed or, at a minimum

drastically changed Plaintiff's calming corner upon which he so heavily relied and which constituted a critical accommodation for him. These sudden changes had predictably disastrous impacts on Plaintiff's ability to learn in the school environment.

16. These impacts were compounded as Plaintiff had difficulties with the degree of isolation from his peers that he experienced in the DBC classroom during the 2022-2023 school year. The only efforts to integrate him were the efforts to get him to go to electives and general education classes. There were no efforts to provide any integration within the context of the DBC classroom itself. The plan put forward by the school district was gradually to move Plaintiff into more and more general education time. However, as described above, the school district provided him with no mechanisms to develop the skills necessary to make this possible.

17. On October 18, 2023, Plaintiff's mother sent an email to the school district explaining that Plaintiff could no longer stay in complete isolation at school, remarking that Plaintiff "needs to be in a small class setting, not an isolation setting." School staff provided no meaningful response. Around the middle of October 2022 Plaintiff stopped attending school.

18. Plaintiff's mother filed an administrative due process complaint on Plaintiff's behalf pursuant to the Individuals with Disabilities Education Act to challenge FISD's isolation of her son and its resultant failure to provide her son a Free Appropriate Public Education.

19. After a hearing on April 4-5, 2023, the hearing officer assigned by the Texas Education Agency to preside over the matter erroneously denied Plaintiff the relief he sought.

20. As the decision of the administrative hearing officer was erroneous, Plaintiff files this appeal.

**FIRST CAUSE OF ACTION (IDEA)**

21. Plaintiff incorporates by reference paragraphs 1-20 of this Complaint.

22. The administrative hearing officer erred in denying Plaintiff the relief he requested.

23. Plaintiff hereby appeals the decision of the administrative hearing officer pursuant to 20 U.S.C. § 1415(i).

24. Plaintiff seeks reversal of the administrative hearing officer's decision and an order requiring Defendant to provide the relief sought by Plaintiff in the underlying administrative proceeding, including private placement at FISD's expense.

25. Pursuant to 20 U.S.C. § 1415(i)(3), Plaintiff is entitled to reasonable attorneys' fees if he prevails in the current litigation.

## PRAYER

Plaintiff seeks reversal of the administrative hearing officer's decision and an order requiring Defendant to provide the remedies sought in Plaintiff's underlying administrative due process complaint, including private placement at FISD's expense.  In addition, Plaintiff requests the following:

- Reimbursement for costs and expenses incurred as a result of Defendant's wrongdoing as articulated above; and, specifically,
- Payment for Plaintiff's reasonable and necessary attorneys' fees and costs of the suit.

DATED: August 28, 2023                          Respectfully Submitted,

                                                ___/s/ Mark Whitburn_____
                                                Mark Whitburn
                                                State Bar No. 24042144
                                                Sean Pevsner
                                                State Bar No. 24079130
                                                Whitburn & Pevsner, PLLC
                                                2000 E. Lamar Blvd., Suite 600
                                                Arlington, Texas 76006
                                                Tel: (817) 653-4547
                                                Fax: (817) 653-4477
                                                mwhitburn@whitburnpevsner.com