Case 3:23-cv-00281    Document 19    Filed on 05/07/24 in TXSD    Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
May 07, 2024
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## Galveston Division

No. 3:23-cv-281

L.D., by and through his next friend, Heather D., *Plaintiff*,

v.

Friendswood Independent School District, *Defendant*.

## MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, *United States District Judge*:

Before the court are the parties' cross-motions for summary judgment. Dkts. 13, 16. The court will grant the defendant's motion.

## I. Background

L.D. is a sixth-grade student within the Friendswood Independent School District ("Friendswood"). Dkt. 13 at 10. He qualifies for special-education services as a student with autism, specific learning disabilities, and attention-deficit hyperactivity disorder. *Id.* L.D. generally has difficulties with impulse control, complying with requests, and receiving instruction in group settings. *Id.*; Dkt. 1 ¶ 7.

After L.D.'s behavioral issues persisted for years in the general-education environment, he was placed in the District Behavioral Classroom ("DBC") at Bales Intermediate School for the 2021–22 school year. Dkt. 13 at 11–12. The DBC is a "highly structured" special-education classroom designed to help students develop and eventually rejoin their peers in the general-education environment. *Id.* L.D. "performed exceptionally in the DBC program" during the 2021–22 school year. *Id* at 12.

In the fall of 2022, L.D. was set to continue in the DBC program, but at a new setting, Friendswood Junior High School ("FJHS"), and with a new teacher. *Id.* at 13. L.D. was to continue receiving instruction in a "small[-]group setting," but due to the varying schedules of his DBC peers, L.D. was left "by himself in the classroom for most of the time." Dkt. 1 ¶ 9. L.D.'s mother grew concerned that L.D.'s social skills would never improve if he remained in a one-student environment. *Id.* ¶ 11. Furthermore, L.D. had developed "trust issues" with his new DBC teacher, and abrupt changes to certain DBC protocols proved difficult for him. *Id.* ¶¶ 12, 14–15.

Friendswood then designed a "comprehensive transition plan" for L.D. to attend more classes in the general-education setting. *Id.* ¶ 16; Dkt. 13 at 13. But L.D. stopped attending school at FJHS on October 21, 2022, before Friendswood implemented the transition plan. Dkts. 1 ¶ 17; 13 at 14. L.D.

then requested a due-process hearing under the Individuals with Disabilities Education Act ("IDEA"). Dkt. 1 ¶ 18. The hearing was held before a special-education officer on April 4, 2023. *Id.* ¶ 19. The hearing officer found in favor of Friendswood. A.R. at 32.[1] L.D. now appeals that decision.

## II. Legal Standards

### A. Review of Due-Process Hearings

A district court reviews the decision of a due-process hearing officer "virtually de novo." *Dallas Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 309 (5th Cir. 2017) (quoting *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997)). "[I]n IDEA proceedings, summary judgment is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Seth B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 967 (5th Cir. 2016) (citation and internal quotation marks omitted). The court "receives the records of the administrative proceedings and also takes additional evidence at the request of any party." *Houston Indep. Sch. Dist. v. V.P.*, 582

---

[1] The pages of the administrative record are consecutively paginated and include the decision, pleadings, exhibits, and transcripts. Dkt. 8.

F.3d 576, 582–83 (5th Cir. 2009). "When no new evidence is presented to the district court in an IDEA suit[,] the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *D.C. v. Klein Indep. Sch. Dist.*, 711 F. Supp. 2d 739, 744 (S.D. Tex. 2010) (cleaned up).

### B. Substantive Review of IEPs

"The IDEA's purpose is to ensure that children with disabilities have access to 'free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.'" *C. G. v. Waller Indep. Sch. Dist.*, 697 F. App'x 816, 818 (5th Cir. 2017) (quoting 20 U.S.C. § 1400(d)(1)(A)). Under the IDEA, "parents and school districts collaborate to develop an Individualized Education Plan ('IEP') that is reasonably calculated to enable the child to receive educational benefits." *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1008 (5th Cir. 2010) (citation and internal quotation marks omitted).

In reviewing the substance of an IEP, a court's core inquiry is whether the IEP was "reasonably calculated to enable the child to receive educational benefits." *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 292 (5th Cir. 2009) (citation and internal quotation marks omitted). The Fifth Circuit

has identified four factors, known as the *Michael F.* factors, that typically guide this inquiry:

> *First*, whether the program is individualized on the basis of the student's assessment and performance;
>
> *Second*, whether the program is administered in the least restrictive environment;
>
> *Third*, whether the services are provided in a coordinated and collaborative manner by the key stakeholders; and
>
> *Fourth*, whether positive academic and non-academic benefits are demonstrated.

*Lamar Consol. Indep. Sch. Dist. v. J.T.*, 577 F. Supp. 3d 599, 604 (S.D. Tex. 2021) (citing *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 253 (5th Cir. 1997)).

### III. Analysis

L.D.'s complaint does not take issue with the substance of his IEP, but rather faults Friendswood for failing to implement key provisions of the IEP. The hearing officer noted that L.D. did "not take issue with the [IEP] as it was developed" and L.D. raises no new objections to the IEP as written here. A.R. at 21; *see also* Dkt. 18 at 2. Rather, L.D.'s principal complaint is that, though his IEP called for instruction in small-group settings, Friendswood

did not provide him adequate instruction in such settings.[2] Dkts. 16 at 21, 18 at 2. Instead, Friendswood offered him the "impossible choice" between complete isolation in the DBC or integration in the "overwhelming general[-]education setting." Dkt. 16 at 30–31. Therefore, though not explicitly labeled as such, L.D.'s claim is properly cast as a failure-to-implement claim.

"Ordinarily, adequacy of an IEP is determined by consideration of the four" *Michael F.* factors. *Spring Branch Indep. Sch. Dist. v. O.W.*, 961 F.3d 781, 795 (5th Cir. 2020). However, in a failure-to-implement challenge, the third and fourth factors predominate. *Id.* at 796. For failure-to-implement claims, "a court must decide whether a FAPE was denied by considering, under the third factor, whether there was a substantial or significant failure to implement an IEP; and under the fourth factor, whether there have been

---

[2] L.D. briefly raises concerns about alterations in his routine, such as changes to the "calming corner" and shorter breaks. Dkt. 16 at 7–9. But, as Friendswood highlights, chosen teaching methodologies and minor alterations in instruction are within a school district's discretion. Dkt. 13 at 30 (citing *Wood v. Katy Indep. Sch. Dist.*, 163 F. Supp. 3d 396, 418–19 (S.D. Tex. 2014)). L.D. offers no meaningful response to this argument, so the court considers these issues abandoned.

demonstrable academic and non-academic benefits from the IEP." *Id.* (citations and internal quotation marks omitted).

While the Fifth Circuit has noted that the first two *Michael F.* factors are "generally not at issue" in failure-to-implement claims, *id.* (citation and internal quotation marks omitted), the court will address them briefly before proceeding to the core of the failure-to-implement inquiry.

### A. First Factor: Individualized Based on Assessment and Performance

An IEP is the "means by which special education and related services are tailored to the unique needs of a particular child." *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017). An IEP should also include "a statement of measurable annual goals, including academic and functional goals," along with a "description of how the child's progress toward meeting the annual goals . . . will be measured." 34 C.F.R. § 1414(d)(1)(A)(i).

L.D.'s IEP, as written, is sufficiently individualized. It contains seven specific goals, multiple individualized accommodations, and detailed plans for L.D. to progress towards general-education classes. Dkt. 13 at 19–20. L.D. raised no objections to the IEP as written at the due-process hearing. A.R. at 21. And although L.D. argues in his response that the first factor weighs in his favor, his argument focuses solely on the failed implementation, not the

substance, of the IEP. Dkt. 16 at 30. L.D.'s IEP, as written, is sufficiently individualized.

## B. Second Factor: Least Restrictive Environment

"IDEA requires that children with disabilities be educated to the maximum extent possible with nondisabled children in the least restrictive environment consistent with their needs, a concept referred to as 'mainstreaming.'" *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 128 (5th Cir. 1993) (internal footnote omitted) (citing 20 U.S.C. § 1412(5)). The least-restrictive-environment analysis turns on "a flexible, two-part test": (1) "whether education in the regular classroom, with the use of supplemental aids and services[,] can be achieved satisfactorily for a given child," and (2) if not, "whether the school has mainstreamed the child to the maximum extent appropriate." *R.H.*, 607 F.3d at 1013 (5th Cir. 2010) (quoting *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1044 (5th Cir. 1989)).

There is once again little dispute that L.D.'s IEP, as written, placed him in the least restrictive environment. Under the first prong, the parties agree that L.D. would not succeed in a full-time general-education environment. Dkts. 13 at 15–16; 16 at 19. Instead, under the second prong, the parties agree that L.D. should primarily be placed in a small-group setting, with periodic

exposure to general-education classrooms. Dkts. 13 at 16, 16 at 21. The core dispute, however, is whether Friendswood actually provided L.D. with this small-group setting, and if not, whether this failure amounts to denial of a FAPE. Dkt. 16 at 19. This inquiry is guided by the third and fourth factors, discussed below.

In sum, the first two *Michael F.* factors demonstrate that L.D.'s IEP, as written, was individualized and set to be administered in the least restrictive environment.

### C. Third Factor: Provision of Educational Services

L.D.'s chief complaint is that, though his IEP called for small-group instruction within the DBC, he received almost exclusively one-on-one instruction in the fall of 2022. *See* Dkts. 16 at 13, 18 at 6. Friendswood concedes that, due to the varying schedules of other DBC students, L.D. was "quite often" the only student in the DBC classroom. Dkt. 13 at 12. However, L.D. also had the daily opportunity to attend "non-core" general-education classes such as art and physical education with larger groups. A.R. at 1180–81.

Dr. Michelle Garcia, L.D.'s expert on autism, testified at the due-process hearing that the binary choice between isolated instruction and general-education classes was inappropriate for L.D. A.R. at 1092. She

testified that L.D. needed time to "make friends and practice social skills" in a "more progressive, least restrictive setting." *Id.* She continued that L.D. needed a slower transition to the general-education classroom. A.R. at 1093.

The court concludes that Friendswood failed to provide L.D. with the amount of small-group instruction called for by his IEP. But a school district's failure "to provide all the services and modifications in an IEP does not constitute a *per se* violation of the IDEA." *Bobby R.,* 200 F.3d at 349. "[A] party challenging the implementation of an IEP must show more than a *de minimis* failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP." *Id.* A provision is "substantial or significant" if it confers an educational benefit. *J.T.,* 577 F. Supp. 3d at 605.

The Fifth Circuit has instructed that the determination of which IEP provisions are significant "cannot be made from an exclusively *ex ante* perspective." *Bobby R.,* 200 F.3d at 349 n.2. Rather, "one factor to consider under an *ex post* analysis would be whether the IEP services that were provided actually conferred an educational benefit." *Id.*

Therefore, as explored in detail below, the core inquiry is whether L.D. received a meaningful educational benefit from his IEP in the fall of 2022, despite Friendswood's failure to implement portions of his IEP.

### D. Fourth Factor: Educational Benefits

"The Fifth Circuit has said that 'educational benefit' is one of the most critical factors in assessing the appropriateness of an IEP." *J.T.*, 577 F. Supp. 3d at 606 (quoting *V.P.,* 582 F.3d at 588). The educational-benefit inquiry is highly individualized and must "be evaluated in light of the child's circumstances." *R.S. v. Highland Park Indep. Sch. Dist.*, 951 F.3d 319, 330 (5th Cir. 2020) (per curiam). Critically, even if a disabled child experiences a brief period of regression, the school has not necessarily violated the IDEA. *See id.* at 337. The IDEA does not require "the best possible education," but rather a "basic floor of opportunity." *V.P.*, 582 F.3d at 588. The Fifth Circuit has indicated that no single academic indicator should be determinative, but the inquiry should "properly focus on a holistic, overall academic record perspective." *H.W. v. Comal Indep. Sch. Dist.*, 32 F.4th 454, 468 (5th Cir. 2022).

L.D.'s progress in the fall of 2022 was, at best, a mixed bag. The hearing officer noted that L.D. mastered multiple TEKS,[3] earned passing grades in a few classes, and attended general-education classes, which was an especially significant step. A.R. at 27. Yet, at the nine-week check-in, L.D. had failed to progress on *any* of the stated IEP goals. *Id.*

Contextualizing L.D.'s progress, or lack thereof, is uniquely difficult given the circumstances. L.D.'s transition to sixth grade brought with it a transition to a new school with new teachers and a new environment. Ms. Holt, the assistant principal responsible for all sixth-grade students at FJHS, testified that sixth grade is a "huge transition for all of our students . . . so many of our students take time to acclimate to the junior[-]high setting." A.R. at 1158. Like many other students, L.D. struggled with the transition to junior high. But L.D. stopped attending FJHS approximately two months into the school year. A.R. at 469. Despite his lack of progress towards his IEP goals, the FJHS assistant principal, special-education coordinator, and L.D.'s DBC teacher all testified that they were confident L.D. would have

---

[3] Texas Essential Knowledge and Skills are Texas's "standards for what students should know and be able to do." *Texas Essential Knowledge and Skills*, TEXAS EDUCATION AGENCY, https://tea.texas.gov/academics/curriculum-standards/teks-review/texas-essential-knowledge-and-skills (last visited Apr. 28, 2024).

progressed on his goals had he been given more time to transition. A.R. at 984–85, 1158–59, 1274–75. In sum, because L.D. attended FJHS for only nine weeks, it is difficult to discern whether L.D.'s struggles are attributable to his transition to sixth grade generally or to specific failures by Friendswood to fully implement his IEP.

But, under the IDEA, a court need not parse out to what degree a school district's failures contributed to a student's performance shortcomings. A district is not required to provide disabled students "with the best possible education, nor one that will maximize the student's educational potential." *V.P.*, 582 F.3d at 583. "Rather, the 'ultimate legal issue' is whether, from a holistic perspective, the child 'was receiving a meaningful educational benefit from the services provided.'" *J.T.*, 577 F. Supp. 3d at 607 (quoting *V.P.*, 582 F.3d at 591).

L.D. received meaningful educational benefits in the fall of 2022. He participated in general-education classes, made friends, and mastered some TEKS. Dkt. 13 at 31. He had opportunities to develop his social skills in the general-education setting, and then reflect on those experiences with his DBC teacher. *See* A.R. 1309, 1315. And he did have some opportunities for small-group socialization. *See* Dkt. 13 at 9–10. While L.D. would have

benefited from more time in small-group instruction, the IDEA does not require total educational optimization.

In sum, the third and fourth factors favor Friendswood. The failure to provide L.D. with the planned amount of small-group instruction was not substantial or significant. The transition to life at FJHS was no doubt difficult for L.D. Nevertheless, he received both academic and nonacademic benefits in the fall of 2022. L.D.'s IEP, as implemented, provided him the "basic floor of opportunity" required by the IDEA. *V.P.*, 582 F.3d at 590.

\*   \*   \*

For the reasons stated above, Friendswood's motion for summary judgment is granted. Dkt. 13. L.D.'s cross-motion for summary judgment is denied. Dkt. 16. A final judgment will issue separately.

Signed on Galveston Island this 7th day of May, 2024.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE